IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER WIGO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMUNITY EDUCATION | : | NO. 13-5657 |
| CENTERS, et al. | : | |

<u>ORDER</u>

AND NOW, this 17th day of March, 2014, upon consideration of plaintiff's amended complaint, defendant Community Education Centers, Inc.'s[1] ("CEC") motion to dismiss or in the alternative for summary judgment (docket entry # 9) and plaintiff's response thereto, and defendants Beese, Green, and County of Delaware's motion to dismiss or in the alternative for summary judgment (docket entry # 17) and plaintiff's response thereto, and the Court finding that:

(a)      Plaintiff Wigo, a veteran said to suffer from post-traumatic stress syndrome, asks the Court to apply equitable tolling principles to prevent the dismissal on statute of limitations grounds of his suit for claims under 42 U.S.C. § 1983 as well as state law claims of intentional infliction of emotional distress, breach of fiduciary and confidential duty, malicious prosecution and false arrest and imprisonment;

(b)      In May of 2011,Wigo pled guilty in the Court of Common Pleas of Delaware County to a charge of driving under the influence ("DUI") and was sentenced to fifteen weekends at the George W. Hill Correctional Facility ("Hill"), which CEC manages and operates on behalf of Delaware County, to be followed by sixty days' house arrest, Amended Complaint

---

[1] Formerly known as Community Corrections Corp.

("AC") at ¶¶ 2, 11;

(c)     When he arrived at Hill for his fourth weekend on July 8, 2011, he and other

inmates were instructed to leave their possessions, that were then placed in transparent bags, in a

large common room before being fully searched elsewhere, id. ¶¶ 12, 18, 19;

(d)     When he returned to the common room, Wigo saw that his possessions had been

moved and retrieved a bag he believed to be his, whereupon he was arrested by a CEC employee

for possessing drug contraband secreted in a deodorant container that Wigo avers was not his, id.

¶¶ 21, 22;[2]

(e)     Wigo alleges that the common room had surveillance cameras in each corner and

that CEC and Delaware personnel represented that the video recordings therefrom would be

preserved for at least thirty days -- when, in fact, their policy and custom was to destroy that

video, id. ¶ 17, and that contention forms the core of his plea for equitable tolling;

(f)     After his arrest, Wigo was handcuffed and escorted to a processing area, where he

asked a guard to review the video surveillance footage that, he asserts, would exonerate him and,

Wigo alleges, he was falsely assured that the video tape would be "looked at," id. ¶¶ 22, 23;

(g)     Wigo also alleges that subsequent examination of the bag contents revealed a

toothbrush and toothpaste Wigo knew were not his, but a correctional officer threw them out,

although fingerprint examination could have exonerated him, id. ¶ 25;

(h)     Wigo also asked that fingerprint evidence be taken from the deodorant canister,

but was told "no forensics will be involved, possession is nine-tenths of the law," id. ¶ 26;

---

[2] Although Wigo named this employee, Jerome Fiordimondo, as a defendant, the docket sheet
confirms that Fiordimondo was never served, no appearance was entered on his behalf, and
neither he nor his employer on his behalf answered the allegations against him.  We therefore
will dismiss him from the suit for failure to prosecute.

(i)     After his arrest, Wigo was placed "in the hole," a cell about six by eight feet where he spent twenty-three hours a day in solitary confinement, for thirty-five days, id. ¶29;

(j)     Wigo was given an administrative hearing on the sixth day of this confinement, during which he asked about the video and was told, "There is no reason to look at the video," and was then sentenced to sixty days "in the hole" but released after thirty five days, id. ¶¶ 30, 32;

(k)     Despite these requests, Wigo alleges, the defendants followed their policy and custom of refusing to produce such video and thereafter causing its destruction, which prevented Wigo and his counsel from exonerating him and deprived him of his fundamental due process (Fifth and Fourteenth Amendment) and fair trial rights, id. ¶¶ 37, 38;

(l)     During his thirty-five days in segregated confinement, Wigo again allegedly pressed for the video surveillance tapes, in writing and through a grievance, and was again assured that they would be checked, id. ¶¶ 32-36, but despite their assurances defendants allegedly failed to check the recordings or preserve them and instead concealed that destruction from Wigo, id. ¶¶ 35, 37;

(m)     After his solitary confinement, Wigo was released into the general population where he served the remainder of his ninety-day DUI sentence in the general population, id. ¶ 31;

(n)     He was subsequently charged in a criminal Information with bringing a controlled substance into a prison and possession of a controlled substance by an inmate, with a mandatory prison sentence of two years, id. ¶ 39;

(o)     On September 29, 2011, Wigo was present for a preliminary hearing where, consistent with the Pennsylvania Rules of Criminal Procedure, the prosecution was not obliged

to share beforehand any evidence (such as the videos) with defense counsel, id. ¶ 41;

(p)     At the hearing, the arresting officer testified that there was video surveillance recording at the relevant time on July 8, 2011, and that the video had been preserved and was in the possession of the Commonwealth, id. ¶ 43;

(q)     That officer also testified that other officers were supposed to be watching the bags to ensure a prisoner did not drop something into another's bag, id.;

(r)     That testimony led Wigo and his counsel to believe defendants had preserved the video surveillance tapes -- which Wigo asserts would exonerate him -- tapes made all the more crucial, he contends, because defendants could not rule out that someone else had placed the contraband in Wigo's bag, id. ¶¶ 43, 44;

(s)     But the video tape was never given to the defense after the September 29, 2011 hearing, id. ¶ 46, and as a result Wigo continued to incur legal fees in his defense until he was found not guilty on March 28, 2013 after a two-day jury trial, id. ¶¶ 46-48;

(t)     Wigo filed suit against CEC, its employee Don Beese (charged with conducting the internal investigation of the contraband), its employee Warden Green (who supervised the facility), and Delaware County, asserting that (1) defendants' fraudulent concealment estops them from asserting a statute-of-limitations defense and (2) the discovery rule should toll the running of that period until after September 29, 2011, id. ¶¶ 2, 3, 5, 6, 46;

(u)     Wigo alleges that defendants knowingly spoliated the video, were malicious or in reckless disregard for his constitutional rights to procedural and substantial due process, as a result of which he suffered the torts he alleges, and that this deprivation was the result of a custom or practice to fail to sanction employees who violate inmates' rights or to train them in

4

the preservation of evidence, in deliberate indifference to rights of inmates, id. ¶¶49-57;

(v)     Defendant CEC urges that we dismiss Wigo's complaint because the events that give rise to his suit occurred on July 8, 2011 and all claims have a two-year statute of limitations, unpaginated CEC MTD at 8;

(w)     CEC notes that even adding thirty-five days in light of Wigo's alleged solitary confinement for that period extends the two-year limitation period to August 12, 2013, a date more than six weeks before Wigo filed his complaint on September 26, 2013, id. at 9;

(x)     CEC contests Wigo's invocation of the discovery rule and asserts that (1) Wigo knew of his injury on July 8, 2011 and (2) spoliation is not his pleaded injury, id. at 10, and therefore all claims are time-barred;[3]

(y)     CEC also asserts as to Wigo's Section 1983 claim that, as a prisoner, Wigo has no protected constitutional liberty interest; he has insufficiently alleged a failure to train amounting to deliberate indifference or a pattern and practice; and the Fifth Amendment applies only to federal government actions, which are not alleged here, id. at 10-17;

(z)     CEC also contends that it had probable cause to initiate criminal proceedings and detain Wigo and therefore his malicious prosecution and false arrest/false imprisonment claims must fail, id. at 18-19;

(aa)    Finally, CEC asserts that no punitive damages should be awarded because Wigo cannot demonstrate it acted with evil motive or intent, id. at19;

(bb)    Defendant Delaware County, answering for itself, Don Beese and Warden Green,

---

[3] The defendants also note that Wigo added a fifth claim (misnumbered) in his November 8, 2013 amended complaint, for false arrest/false imprisonment, which they assert is even farther out of time than the original allegations.

incorporates CEC's arguments, Delaware MTD at 4 n.1;

(cc)    The Delaware County defendants contend that the discovery rule does not toll Wigo's claim under Pennsylvania law, which apply to Wigo's federal claims, nor does the doctrine of fraudulent concealment, which can only be properly invoked if their actions interfered with Wigo's investigation of the facts on which his civil-rights claim is premised, id. at 5-11;

(dd)    We agree with the defendants and, for the reasons detailed below, will dismiss Wigo's claims on statute of limitations grounds;

(ee)    A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6), see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005);

(ff)    As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), and a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. at 678;

(gg)    As our Court of Appeals has explained post-Twombly and Iqbal, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district courts are to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated.
> The district court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  Second, a
> district court must then determine whether the facts alleged in the

> complaint are sufficient to show that the plaintiff has a 'plausible
> claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009);

(hh)   In deciding a motion to dismiss, all well-pleaded allegations of the complaint

must be taken as true and interpreted in the light most favorable to the plaintiffs, and all

inferences must be drawn in their favor, see McTernan v. City of York, PA, 577 F.3d 521, 526

(3d Cir. 2009) (internal quotation marks omitted);

(ii)   The pertinent statute of limitations for a 42 U.S.C. §1983 action should be

borrowed from the common law of the forum state, 42 U.S.C. §1988(a), see also Kost v.

Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993);

(jj)   In Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court held that all Section

1983 actions should be classified as claims for personal injury for the purpose of determining the

limitations period under the applicable state law, Wilson, 471 U.S. at 272-76, which for claims

brought in the Commonwealth of Pennsylvania is two years, Kost, 1 F.3d at 190;

(kk)   An identical two-year limitation governs Wigo's claims for intentional infliction

of emotional distress,[4] breach of fiduciary and confidential duty,[5] malicious prosecution[6] and

false arrest and imprisonment,[7] see 42 Pa.C.S.A. 5524;

(ll)   Therefore, on the face of his amended complaint all of Wigo's claims are time-

barred;

(mm)   Wigo's contention that defendants are estopped from asserting a statute of

---

[4] See M.R. Mikkilineni v. Amwest Surety Ins. Co., 919 A.2d 306 (Pa. Cmwlth. 2007).
[5] See Weston v. Northampton Personal Care, Inc., 62 A.3d 947 (Pa. Super. 2013).
[6] See Ash v. Continental Ins. Co. 932 A.2d 877 (Pa. 2007).
[7] Id.

limitations defense because of their own actions does not revive his claims;

(nn)    Tolling principles, too, borrow from the forum state, see also Hardin v. Straub, 490 U.S. 536, 539 (1989) -- unless they would "frustrate federal policy," Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000), a contention not made here;

(oo)    The Pennsylvania Supreme Court recently explained in Fine v. Checcio, 870 A.2d 850 (Pa. 2005), that the discovery rule -- an exception Wigo would have us apply here -- acts to toll the running of a statute of limitations "in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises," Fine, 870 A.2d at 859;

(pp)    Fraudulent concealment, based on a doctrine of estoppel, provides that a defendant may not invoke a statute of limitations if through fraud or concealment that defendant "caused the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts," Molineux v. Reed, 532 A.2d 792, 794 (Pa. 1987);

(qq)    The Pennsylvania Supreme Court in Fine made clear that such pertinent facts are those "upon which his recovery may be based," Fine, 870 A.2d at 861, because "the overarching tenet [is] the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent" and that standard requires "only that knowledge which is reasonably attained," id.;

(rr)    Our Court of Appeals has applied equitable tolling where, for example, a plaintiff delayed filing a lawsuit in reliance on defendants' misstatement of the limitations period, see Estate of Miller ex rel. Miller v. Hudson, 528 Fed Appx. 238 (3d Cir. 2013);

(ss)    But such is not the case here, where the injury undergirding all of Wigo's claims

8

was his detention on July 8, 2011 and none of defendants' alleged actions -- either assuring him of the continued existence of the surveillance video or concealing its destruction -- prevented Wigo's timely filing of any claims within the two years after the July 8, 2011 incident; and

(tt)     We will therefore dismiss Wigo's claims as untimely;

It is hereby ORDERED that:

1.     Defendant CEC's motion to dismiss or in the alternative for summary judgment is GRANTED;

2.     Defendants Beese, Green, and County of Delaware's motion to dismiss or in the alternative for summary judgment is GRANTED;

3.     Wigo's claims against defendants Fiordimondo, CEC, Beese, Green and County of Delaware are DISMISSED WITH PREJUDICE; and

4.     The Clerk of Court shall CLOSE the case statistically.

BY THE COURT:


/s/ Stewart Dalzell, J.